```
              UNITED STATES DISTRICT COURT FOR THE

               EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, :    CRIMINAL CASE
                          :
         Plaintiff(s)     :     Case No.  2:19-cr-00088-PD-1
                          :
   v.                     :     Philadelphia, Pennsylvania
                          :     January 8, 2020
NATHAN STEWART WEYERMAN,  :     Time 10:04 a.m. to 10:41 a.m.
                          :
         Defendant(s)     :
. . . . . . . . . . . . . .
```

```
              TRANSCRIPT OF CHANGE OF PLEA HEARING
              BEFORE THE HONORABLE PAUL S. DIAMOND
                UNITED STATES DISTRICT COURT JUDGE
```

APPEARANCES:

```
For the Government:        Kevin L. Jayne, Esq.
                           U.S. Attorney's Office
                           615 Chestnut Street, Ste. 1250
                           Philadelphia, PA 19106

For Nathan S. Weyerman:    Angela Halim, Esq.
                           Federal Community Defender
                           Office For PAED
                           601 Walnut Street, Ste. 540 West
                           Philadelphia, PA 19106

Court Recorder:            Lenora Wittje
                           Clerk's Office
                           U.S. District Court

Transcription Service:     Precise Transcripts
                           45 N. Broad Street
                           Ridgewood, NJ 07450
```

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1          (Proceedings started at 10:04 a.m.)

2          ESR/CLERK LENORA WITTJE:  All rise.  The court is

3   in session, the Honorable Paul S. Diamond presiding.

4          JUDGE PAUL S. DIAMOND:  Please be seated

5   everybody.  Good morning, Ms. Halim.  Nice to see you.

6          COUNSEL ANGELA HALIM:  You as well, Your Honor.

7          THE COURT:  And I believe this is the first time

8   you're appearing before me, Mr. Jayne, welcome.

9          COUNSEL KEVIN L. JAYNE:  Second, second time,

10  Your Honor, but it was very brief the first time.

11         THE COURT:  You weren't memorable in your first

12  appearance.

13         MR. JAYNE:  I'm, I'm not.  Thank you.

14         THE COURT:  Purpose of the proceeding today is

15  for the defendant to enter a guilty plea in this matter.

16  Will the defendant please rise and will the clerk please

17  swear the defendant?

18         ESR/CLERK WITTJE:  Please raise your right hand.

19  Do you swear or affirm to tell the truth, the whole truth,

20  so help you, God?

21         DEFENDANT NATHAN STEWART WEYERMAN:  Yes.

22         ESR/CLERK WITTJE:  Please state your full name

23  for the record.

24         THE DEFENDANT:  Nathan Weyerman.

25         THE COURT:  Please have a seat, and if you would

```
1     speak directly into the microphone I'd be very grateful.
2     Mr. Weyerman, do you understand that during these
3     proceedings I will ask you questions and that I assume the
4     answers you give to my questions will be truthful?
5               THE DEFENDANT:  Yes.
6               THE COURT:  And since you're now sworn and under
7     oath you understand that the answers you give to my
8     questions will be subject to penalties of perjury or
9     making a false statement if you do not tell the truth?
10              THE DEFENDANT:  Yes.
11              THE COURT:  You also understand that I'll ask
12    some questions to satisfy myself that you are competent
13    and able to enter a plea and to satisfy myself that you
14    are knowingly and voluntarily giving up your rights in
15    entering this plea?
16              THE DEFENDANT:  Yes.
17              THE COURT:  If you plead guilty, do you
18    understand that I will ask you questions about what you
19    did to satisfy myself that you're guilty as charged?
20              THE DEFENDANT:  Yes.
21              THE COURT:  If at any time you don't understand
22    anything at all you let me know immediately, okay?
23              THE DEFENDANT:  Okay.
24              THE COURT:  And if you want to speak with your
25    lawyer you let me know, we'll take an immediate recess so
```

1    you can speak privately with Ms. Halim for as long as you

2    need to.  Clear?

3              THE DEFENDANT:  Clear.

4              THE COURT:  Mr. Weyerman, has anyone instructed

5    you to respond untruthfully to my questions?

6              THE DEFENDANT:  No.

7              THE COURT:  What's your full name?

8              THE DEFENDANT:  Nathan Weyerman.

9              THE COURT:  And how old are you?

10             THE DEFENDANT:  Forty-four.

11             THE COURT:  And how far did you go in school?

12             THE DEFENDANT:  Two and a half years of doctorate

13   study at dental school.

14             THE COURT:  I'm sorry.  Two and a half years of

15   doctoral studies at dental school?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Where was that?

18             THE DEFENDANT:  Temple University.

19             THE COURT:  And could you briefly describe your

20   most recent job or employment?

21             THE DEFENDANT:  I was employed by a catering

22   company as a driver, delivery driver.

23             THE COURT:  You said your full name was Nathan

24   Weyerman.  Do you have a middle name?

25             THE DEFENDANT:  Oh, yes.  Stewart.

1          THE COURT:  Stewart, okay.  Have you taken any

2    drugs, medicine, or pills in the last 24 hours?

3          THE DEFENDANT:  Yes.

4          THE COURT:  What have you taken?

5          THE DEFENDANT:  Duloxetine and omeprazole.

6          THE COURT:  Omeprazole is the purple pill, right?

7    It's for, it's for acid reflux.  Ms. Harim, what is the

8    first drug?

9          MS. HALIM:  The first drug it's duloxetine which

10   is spelled D-U-L-O-X-E-T-I-N-E.  The brand is more form-

11   most known as Cymbalta.  It's prescribed for either nerve

12   pain or it's an SSRI antidepressant.  Mr. Weyerman takes

13   it for nerve pain.  He has a pinched nerve of his

14   shoulder.

15         THE COURT:  Okay.  Can you tell me what the

16   dosage is?

17         MS. HALIM:  I don't know what the dosage is.

18         THE COURT:  Do you know, Mr. Weyerman?

19         MS. HALIM:  Mr., Mr. Weyerman didn't know.

20         THE DEFENDANT:  I don't know.

21         THE COURT:  How much of it do you take?

22         THE DEFENDANT:  One pill.

23         THE COURT:  And when do you take --

24         THE DEFENDANT:  Once per day.

25         THE COURT:  And how -- when in the day do you

```
1    take it?
2               THE DEFENDANT:  In the evening.
3               THE COURT:  And what effect does it have on you?
4               THE DEFENDANT:  It lessens my sciatica.
5               THE COURT:  And that's prescribed by the prison
6    doctor?
7               THE DEFENDANT:  Yes.
8               THE COURT:  And you're taking it in the amount
9    prescribed by the prison doctor?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Does it have any other effect on you
12   at all other than lessening the pain?
13              THE DEFENDANT:  No.
14              THE COURT:  Have you drunken alcoholic beverages
15   in the last 24 hours?
16              THE DEFENDANT:  No.
17              THE COURT:  Have you ever been hospitalized or
18   treated for mental illness or drug addiction?
19              THE DEFENDANT:  One minute.  Yes.
20              THE COURT:  Could you please explain?
21              THE DEFENDANT:  I was treated for anxiety and
22   depression.
23              THE COURT:  And when was that?
24              THE DEFENDANT:  From about 2014 until 2016.
25              THE COURT:  And where were you treated?
```

1          THE DEFENDANT:  I was treated by Mary Howard

2    Health Clinic on Sansom Street around the corner from

3    here.

4          THE COURT:  And so that was an outpatient

5    treatment?

6          THE DEFENDANT:  Outpatient, yes.

7          THE COURT:  And were you treated by a

8    psychiatrist, psychologist, social worker?

9          THE DEFENDANT:  I think a social worker.

10          THE COURT:  And you were treated for anxiety and

11    depression?

12          THE DEFENDANT:  Correct.

13          THE COURT:  And were you prescribed any

14    medication?

15          THE DEFENDANT:  I was.

16          THE COURT:  And what was that?

17          THE DEFENDANT:  Zoloft.

18          THE COURT:  And who prescribed the Zoloft?

19          THE DEFENDANT:  I don't know her name.

20          THE COURT:  A physician?  You have to say yes or

21    no.

22          THE DEFENDANT:  Paul -- a -- yes.

23          THE COURT:  Okay.  A physician.  And do you

24    happen to know how much Zoloft you were prescribed?

25          THE DEFENDANT:  I believe it was 25 or 50

1    milligrams.

2              THE COURT:  A day?

3              THE DEFENDANT:  A day.

4              THE COURT:  Did it help?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And you stopped your therapy in 2016?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And when did you stop taking the

9    Zoloft?

10             THE DEFENDANT:  Around that same time.

11             THE COURT:  And did, did -- what effect if any

12   did the going off the Zoloft have?  Did you notice any

13   difference?

14             THE DEFENDANT:  Yes.  I became depressed again.

15             THE COURT:  And did you receive any other

16   treatment for your depression?

17             THE DEFENDANT:  No.

18             THE COURT:  You depressed now?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Ms. Halim, is your client competent

21   to plead?

22             MS. HALIM:  I believe so.  Yes, Your Honor.

23             THE COURT:  Well, we have to do better than that.

24   Either he is or he isn't.  Is he competent to plead?

25             MS. HALIM:  He is competent to plead.

1            THE COURT:  Thank you.  Mr. Weyerman, have you

2    told the prison doctors of your depression?

3            THE DEFENDANT:  No.

4            THE COURT:  Why not?

5            THE DEFENDANT:  'Cause of their rules of

6    confidentiality.

7            THE COURT:  They don't have them?

8            THE DEFENDANT:  They do not.

9            THE COURT:  And you don't want people to know

10   you're depressed?

11           THE DEFENDANT:  I guess.

12           THE COURT:  Look, I'm not asking these questions

13   to probe your, your -- to probe private matters.  I just

14   need to know if you're competent to plead, enter a plea of

15   any kind and you -- if you were taking psychotropic

16   medicine at one time and then stopped taking it I need to

17   know why and what effect it had on you.  You understand?

18           THE DEFENDANT:  Okay.

19           THE COURT:  Are you seriously depressed?

20           THE DEFENDANT:  No.

21           THE COURT:  Does your depression affect your

22   ability to read or write?

23           THE DEFENDANT:  No.

24           THE COURT:  Does it affect your ability to

25   understand what's going on around you?

1          THE DEFENDANT:  No.

2          THE COURT:  Does it affect your ability to

3    converse with your lawyer and understand what she says to

4    you?

5          THE DEFENDANT:  No.

6          THE COURT:  Other than the Cymbalta, are you

7    currently or have you recently been under the care of a

8    physician, psychiatrist, psychologist, social worker?

9          THE DEFENDANT:  No.

10          THE COURT:  Physically how are you feeling right

11   now?

12          THE DEFENDANT:  Healthy.

13          THE COURT:  And do you have any difficulty

14   hearing?

15          THE DEFENDANT:  No.

16          THE COURT:  Do you understand that you have the

17   right to be represented by an attorney at every stage of

18   the proceedings against you?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you understand that if you

21   cannot afford the services of an attorney to try your case

22   or to appeal your case, one will be appointed to represent

23   you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You have an attorney, Ms. Halim,

1    correct?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Have you have ample opportunity to

4    discuss your case with Ms. Halim?

5            THE DEFENDANT:  Yes.

6            THE COURT: And are you satisfied with Ms. Halim's

7    representation of you?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Have you received a copy of the

10   indictment in this case, that is the written charges made

11   against you by the grand jury?

12           THE DEFENDANT:  Yes.

13           THE COURT:  You understand that the grand jury

14   has brought two charges against you, two counts in the

15   indictment, count one, receiving child pornography, and

16   count two, possessing child pornography?  You understand

17   those are the charges that have been brought against you?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Mr. Jayne, is there a plea agreement

20   in this case?

21           MR. JAYNE:  Yes, Your Honor.

22           THE COURT:  Could please state the terms and

23   stipulations of the plea agreement?

24           MR. JAYNE:  Yes, Your Honor.  May I approach?

25           THE COURT:  Wherever you're most comfortable.

1    You can remain seated if you wish.

2              MR. JAYNE:  Your Honor, Mr. Weyerman has agreed

3    to plead guilty by a written plea agreement to count --

4    that includes pleading guilty to count two of the

5    indictment which charges him with, with possession of

6    child pornography under 18 USC Section 2252(a)(4)(B), and

7    (b)2, not to contest forfeiture as, as stated in the

8    indictment.  At the time of sentencing, the Government

9    will move to dismiss count one of the indictment.  The

10   defendant waives statute of limitations as to the count to

11   be dismissed and agrees that if you withdraw from or

12   challenges the plea agreement entered that the count will

13   be reinstated under the need of a statute of limitations

14   or double jeopardy clause will bar prosecution on the

15   dismissed count.  The Government is free to comment on, on

16   the evidence and circumstances of this case as prescribed

17   in the plea agreement.  There is a statutory maximum and

18   mandatory minimum sentence that's described in the plea

19   agreement.  Would Your Honor like me to go through that?

20             THE COURT:  I'll review that with him.

21             MR. JAYNE:  Yes, Your Honor.  He understands the

22   supervised release may be revoked.

23             THE COURT:  I'll review that with him.

24             THE COURT:  Thank you, Your Honor.  There's a

25   number of criminal forfeiture fine and restitution

1    provisions in the plea agreement that are described, and
2    it includes paying a special assessment of $100.00 at, at
3    such time as directed by the Court.  In terms of
4    forfeiture of assets, Mr. Weyerman's agreed to forfeit
5    four items, a Hewlett-Packard desktop computer, a thumb
6    drive, an Acer laptop, and a Seagate external hard drive.
7    There are, there are some other devices in -- that were
8    seized by the Government that the Government plans on
9    wiping and returning to, to whoever Mr. Weyerman's
10   attorney directs us to.  Mr. Weyerman's agreed not to
11   withdraw his plea because the court declines to follow any
12   recommendation, motion, or stipulation by the parties.
13   There are stipulations in the plea agreement under the
14   guidelines 6B1. - 6B1.4.  That includes that they -- the
15   parties agree and stipulate the base offense level is 18.
16   The parties agree and stipulate that the defendant's
17   offense involved a child under the age of 12 years which
18   is two-level increase.  Parties agree and stipulate the
19   defendant's offense involved sadistic or made a
20   masochistic images or depictions of violence or the sexual
21   abuse or exploitation of an infant or toddler which is an
22   increase by four points.  Parties agree and stipulate that
23   the defendant's offense involved more than 600 images
24   which is a five-level increase.  The Government -- the
25   defendant understands the Government will contend that the

1    defendant engaged in a pattern of activity involving
2    sexual abuse of a minor which calls for a five-level
3    increase.  The defendant disagrees and will argue
4    regarding this specific defense characteristics to the
5    court.  Similarly, defendant understands the Government
6    will contend that defendant's events - offense involved
7    the use of computer or interactive computer service
8    increasing the defense level by two additional points.
9    Defendant disagrees and it will be left up to the court at
10   sentencing.  As the date of this agreement, Mr. Weyerman
11   has demonstrated acceptance, responsibility for the two-
12   level downward adjustment and additional one-level
13   downward adjustment under 3E1.1.  Mr. Weyerman has
14   described in the plea agreement and understands that there
15   are certain obligations, registrational requirements under
16   Sex Offender Registration and Notification Act.  Mr. --
17              THE COURT:  He gets a third point, right?
18              MR. JAYNE:   Yes, Your Honor.
19              THE COURT:  Okay.
20              MR. JAYNE:  Three total points.
21              THE COURT:  Okay.
22              MR. JAYNE:  If he commits any federal, state, or
23   local crime or otherwise violates his plea agreement,
24   there are a number of remedies the Government may seek
25   under paragraph 14.  In paragraph 15 there is a -- the

1    defendant voluntarily and expressly waives all rights to

2    PO collateral attack --

3              THE COURT:  I'll review the appellate wavier with

4    him --

5              MR. JAYNE:  Thank you, Your Honor.

6              THE COURT:  -- but you may want to discuss the

7    exceptions to the appellate wavier.

8              MR. JAYNE:  Yes, Your Honor.  So, it's a -- the

9    appellate wavier that's, that's, that's standard in our

10   district, however, there is a -- one additional item

11   that's, that's not usual which is that Mr. Weyerman has

12   the ability to -- and I'll just read it, "that if the

13   district court denies his motion to suppress evidence

14   which the court has denied, that motion just rests

15   evidence.  The defendant may challenge the court's ruling

16   on appeal.  Just for the record, Your Honor has denied his

17   motion to suppress and he has that right to appeal just

18   that issue.  Mr. Weyerman's indicated he is satisfied with

19   his legal representation.  It's agreed that the party's

20   guilty plea agreement contains no additional promises,

21   agreements, or understandings other than those set forth

22   in the plea agreement.  And Mr. Weyerman has also signed

23   an acknowledgment of rights along with his lawyer at --

24   which is attached to the plea agreement.

25              THE COURT:  Thank you.  Ms. Halim, are these the

1    terms of the stipulations of the plea agreement?

2              MS. HALIM:  Yes, Your Honor, they are.

3              THE COURT:  Mr. Weyerman, have you had a chance

4    to review -- could I see the plea agreement, please?

5    Thank you.  Mr. Weyerman, have you had the opportunity to

6    review every word of this guilty plea agreement with your

7    lawyer

8              THE DEFENDANT:  Yes.

9              THE COURT:  Did she answer all your questions in

10   connection with the agreement?

11             THE DEFENDANT:  Yes.

12             THE COURT:  You feel you understand it pretty

13   well?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And are the terms and stipulations of

16   the agreement as recited by Mr. Jayne a minute ago the

17   terms and stipulations as you best understand them?

18             THE DEFENDANT:  Yes.

19             THE COURT:  You understand that the sentence I

20   impose on you may be affected by the stipulations that you

21   and the Government have entered into and that Mr. Jayne

22   just described?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Has anyone made any promise or

25   assurance of any kind to you that is not in the plea

1    agreement in an effort to persuade or induce you to accept

2    the agreement or to plead guilty in this case?

3            THE DEFENDANT:  No.

4            THE COURT:  Has anyone threatened you in any way

5    in an effort to persuade or induce you to accept this

6    agreement or to plead guilty in this case?

7            THE DEFENDANT:  No.

8            THE COURT:  You've signed this plea agreement.

9    Is that right?

10           THE DEFENDANT:  That is correct.

11           THE COURT:  This is your signature?

12           THE DEFENDANT:  It is.

13           THE COURT:  You signed it on Monday?

14           THE DEFENDANT:  Yes.

15           THE COURT:  And did you also review with Ms.

16   Halim every word of the Acknowledgement of Rights that

17   were on the three-page document that follows the guilty

18   plea agreement?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Did Ms. Halim answer all your

21   questions in connection with that document?

22           THE DEFENDANT: Yes.

23           THE COURT:  You feel you understand that pretty

24   well?

25           THE DEFENDANT:  Yes.

1          THE COURT:  And you signed that as well.  Is that
2    correct?

3          THE DEFENDANT:  I did.  Correct.

4          THE COURT:  Mr. Weyerman, Mr. Jayne is gonna
5    describe the factual basis of this guilty plea.  That
6    means he is going to set out what the Government alleges
7    that you did here.  And when he is done, I'm gonna ask you
8    whether or not you did what Mr. Weyerman says you did.  I
9    anticipate that he is going to read from pages 8 and 9 of
10    the Government's Guilty Plea Memorandum, the section
11    entitled factual basis for the plea.  Do you, you have
12    that there, Ms. Halim?

13          MS. HALIM:  I do.  Yes.

14          THE COURT:  Could you please follow along, Mr.
15    Weyerman, listen and read, and when he's done, I'm gonna
16    ask you if you have any - anything you want to correct,
17    anything he said that you think is wrong.  So, please
18    listen and read carefully.  Mr. Jayne.

19          MR. JAYNE:  Thank you, Your Honor.  If this
20    matter were to proceed to trial, the Government would
21    present the following evidence to the testimony of the
22    witnesses, subpoenas, and the search warrant returns and
23    other evidence obtained during the course of the
24    investigation.  First, for purposes of the recidivism
25    enhancement provision in 18 USC section 2252(b)2 --

1          THE COURT:  Mr. Jayne, I appreciate your

2    standing, but I imagine that the ESR could barely pick you

3    up so perhaps you want to sit to kind of speak into the

4    microphone.

5          MR. JAYNE:  Thank you, Your Honor.  So, for

6    purposes of that recidivism enhancement provision, before

7    being found with the child pornography that forms the

8    basis of count 2 which Mr. Weyerman is pleading guilty to

9    to today, Mr. Weyerman had already received a prior

10   predicate conviction involving sexual abuse of a minor,

11   and more specifically on or about March 14, 2006, Mr.

12   Weyerman pleaded guilty in CP-46-CR-2027-2004 to F1 rape

13   of a child, F1 involuntary deviate sexual intercourse with

14   a person under the age of 13, and M1 corruption of the

15   mind of a minor.  And there are two bases for the res-

16   the, the enhancement under 18 USC section 2252(b), (b)2,

17   there's, there's prior conviction and independent basis is

18   also that Mr. Weyerman's possession of visual depictions

19   involving pubescent minor or a minor who had not yet

20   attained 12 years of age are independent basis for that

21   enhancement statutorily.  In terms of the conduct in this

22   case, Your Honor, based on an FBI investigation in 2017

23   and 18, an IP address for a Verizon account subscribed in

24   Mr. Weyerman's name at his girlfriend's Philadelphia

25   residence on Tackawanna Street was an original requester

1   of known child pornography on the internet via Freenet, an

2   anonymous, peer-to-peer file-sharing network.  On

3   September 20, 2018, law enforcement executed a federal

4   search warrant at Mr. Weyerman's Philadelphia residence on

5   Dyre, or Dyre Street where he lived alone and was

6   initially present for the search.  Law enforcement found

7   and seized a number of electronic devices that belonged to

8   and were used by defendant.  Among those devices seized,

9   the following contained child pornography; an HP desktop

10  computer, serial number MXL024153Y, a PNY USB thumb drive,

11  an Acer laptop serial number LXAYE0X018852159DF2000, an

12  Alcatel cellular phone, model One Touch, 0 -- 7024W.

13  These devices were forensically analyzed and found to

14  contain collectively 502 images and 25 videos of child

15  pornography and that included multiple images and videos

16  depicting adult males engaged in sexual intercourse with

17  prepubescent minors.  Defendant knowingly possessed these

18  devices that contained the child pornography and in terms

19  of the interstate commerce element, forensic analysis

20  shows the child pornography down- was downloaded via the

21  internet using peer-to-peer internet file-sharing programs

22  including Freenet.  And Your Honor, just for the record, I

23  discussed this with Ms. Halim before the plea hearing.

24  I'm striking the reference to NZBGet and if, if the court

25  prefers, I can file a -- the change of plea memo with that

1   --

2          THE COURT:  No, no, that's, that's the agreement

3   that has to be altered in writing not the, not the Guilty

4   Plea Memorandum.  And you're reciting the factual basis

5   now and you're saying that he used Freenet, period.

6          MR. JAYNE:  Freenet, period.  Exactly.

7          THE COURT:  Okay.  Go ahead.

8          MR. JAYNE:  Further, the Government would be

9   prepared to prove that child pornography was possessed on

10  devices that were manufactured outside of the Commonwealth

11  of Pennsylvania, thus the devices would've moved to

12  interstate commerce.  Unless the court has any questions,

13  that is the factual basis.

14         THE COURT:  Mr. Weyerman, did Mr. Jayne

15  accurately describe what you did here?

16         THE DEFENDANT:  Yes, he did.

17         THE COURT:  Did he get anything at all wrong?

18         THE DEFENDANT:  No.

19         THE COURT:  Is there anything at all he said that

20  you want to correct?

21         THE DEFENDANT:  Nothing.

22         THE COURT:  You understand that you're admitting

23  to these facts and pleading guilty here today?

24         THE DEFENDANT:  I do.

25         THE COURT:  And are you pleading guilty to one

1    count of possessing child pornography because you are in

2    fact guilty of committing that crime?

3                THE DEFENDANT:  I am.

4                THE COURT:  Do you understand that by pleading

5    guilty you are giving up your right to challenge the

6    indictment returned against you in a grand jury of

7    proceedings in obtaining the indictment?

8                THE DEFENDANT:  I do.

9                THE COURT:  You understand that you are entitled

10   to plead not guilty?

11               THE DEFENDANT:  Yes.

12               THE COURT:  You understand that if you do not

13   plead guilty you would have the right to be tried by a

14   jury or by a judge without a jury?

15               THE DEFENDANT:  Yes.

16               THE COURT:  You understand that you through your

17   attorney could participate in the selection of the jury?

18               THE DEFENDANT:  Yes.

19               THE COURT:  You understand that if you plead not

20   guilty you have the right to be tried with the assistance

21   of counsel?

22               THE DEFENDANT:  Yes.

23               THE COURT:  And do you understand that at trial

24   you would be presumed to be innocent?

25               THE DEFENDANT:  Yes.

1           THE COURT:  You understand that the Government

2    would be required to prove you guilty by competent

3    evidence of beyond a reasonable doubt before you could be

4    found guilty at trial?

5           THE DEFENDANT:  Yes.

6           THE COURT:  You understand you would not have to

7    prove that you are innocent?

8           THE DEFENDANT:  Yes.

9           THE COURT:  You understand in the course of trial

10   the witnesses for the Government would have to come to

11   court and testify in your presence?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand that you would have

14   the right to confront those witnesses?

15          THE DEFENDANT:  Yes.

16          THE COURT:  You understand that your attorney

17   could cross examine the witnesses for the Government,

18   object to evidence offered by the Government, and offer

19   evidence on your behalf at trial?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that your guilty

22   plea agreement allows you to appeal my decision denying

23   your motion to suppress in this case, but otherwise, other

24   than that, you are giving up your right to any other

25   challenge to the matter in which the Government obtained

1    evidence against you?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you understand that the evidence

4    you could challenge but you're giving up the right to

5    challenge would include any admissions or confessions made

6    by you, any other physical evidence other than what was

7    the subject of the suppression motion that I denied, any

8    other physical evidence, any wiretap evidence, or any

9    identification evidence?

10            THE DEFENDANT:  Yes.

11            THE COURT:  You understand that at trial you

12    would have the right to subpoena and compel the attendance

13    of witnesses?

14            THE DEFENDANT:  Yes.

15            THE COURT:  And do you understand that at trial

16    you would have the right to present witnesses including

17    character witnesses as testimony to raise a reasonable

18    doubt?

19            THE DEFENDANT:  Yes.

20            THE COURT:  You understand that at a trial while

21    you'd have the right to testify because to do so you also

22    would have the right not to testify?

23            THE DEFENDANT:  Yes.

24            THE COURT:  You understand that no inferences,

25    suggestion, or guilt could be drawn from the fact that you

1    did not testify?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that you have the

4    right not to be compelled to incriminate yourself?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that your attorney

7    could argue to the jury and to the court on your behalf

8    and against the Government's case at trial?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that you could only

11   be convicted by a jury that unanimously found you guilty?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If at trial you were found guilty, do

14   you understand that after trial you'd be able to appeal

15   the guilty verdict to an appellate court?

16             THE DEFENDANT:  Yes.

17             THE COURT:  You understand you could have a

18   lawyer represent you in such an appeal?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that the appellate

21   court might reverse the conviction?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you understand that by pleading

24   guilty you are giving up your right to appeal from any

25   conviction after trial?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand as set out in your

3    guilty plea agreement, aside from the provision that

4    preserves your right to appeal my denial of your motion to

5    suppress, that you are otherwise expressly waiving --

6    excuse me -- that you are otherwise expressly and

7    voluntarily waiving, meaning giving up forever, all your

8    other rights to appeal or collaterally attack your

9    conviction, sentence, or any other matter relating to this

10   prosecution, and that this waiver includes a waiver of

11   direct to appeal if collaterally attacked under any

12   provision of law?

13             THE DEFENDANT:  Yes.

14             THE COURT:  You understand that if I accept your

15   guilty plea, the only issues you may raise on direct

16   appeal or in a petition for collateral relief are you

17   could appeal my ruling as I indicated denying your motion

18   to suppress, you could argue that I imposed a sentence

19   that exceeds the statutory maximum for any count of

20   conviction, and since there is only one count here, that

21   exceeds the statutory maximum, a challenge -- you could

22   make a challenge to any upward departure or variance

23   unopposed under the sentencing guidelines, and that your

24   attorney here, Ms. Halim, provided you with

25   constitutionally ineffective assistance?

1          THE DEFENDANT: Yes.

2          THE COURT:  You understand that you could also

3   argue -- excuse me.  You understand that if the Government

4   appeals from the sentence I impose on you, you could also

5   appeal from it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you plead guilty and I accept your

8   plea, do you understand you will waive your right to a

9   further trial as well as the other rights I have just

10  described?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You understand there will be no

13  trial?

14         THE DEFENDANT:  Yes.

15         THE COURT:  You understand that if you plead

16  guilty and I accept your plea, I will enter a judgement of

17  guilty and sentence you on the basis of your guilty plea

18  and in accordance with the advisory sentencing guidelines

19  after considering a Presentence Report?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You understand you're pleading guilty

22  to count two of the indictment, possessing child

23  pornography?

24         THE DEFENDANT:  Yes.

25         THE COURT:  You understand that the essential

1    elements of that crime which the Government would have to

2    prove beyond a reasonable doubt in any trial or

3    (indiscernible) that you knowingly possessed one or more

4    devices containing a visual depiction, second, that the

5    prosecution -- excuse me, that the production of the

6    visual depiction involved the use of a minor engaging in

7    sexually explicit conduct, third, that the visual

8    depiction was of a minor engaging in sexually explicit

9    conduct, fourth, that the def- that you knew the visual

10    depiction involved a minor engaging in sexually explicit

11    conduct, and fifth, that the visual depictions had been

12    transported using any means or facility of interstate

13    commerce or were produced using materials that had been

14    used, shipped, or transported in interstate commerce or

15    foreign commerce by any means including through computers.

16    You understand also that to approve -- that the Government

17    would also have to prove beyond a reasonable doubt a sixth

18    element to seize a -- the statutory recidivist enhancement

19    that the minors involved included prepubescent minors or

20    minors who had not yet attained 12 years of age.  You

21    understand that to secure your conviction and to get the

22    sentencing enhancement as charged in count two of the

23    indictment, the Government would have to prove those six

24    elements?

25                THE DEFENDANT:  Yes.

1          THE COURT:  Mr. Jayne, would you please state the

2     maximum penalty fine, special assessment, forfeiture of

3     any mandatory minimum penalty?

4          MR. JAYNE:  Yes, Your Honor.  Mr. Weyerman faces

5     a total maximum sentence on count two, the possession of

6     child pornography by a sex offender of, and this is with

7     his recidivism enhancement, 20 years imprisonment with a

8     mandatory minimum of 10 years imprisonment, five years up

9     to a lifetime of supervised release, a $250,000.00 fine,

10    forfeiture, restitution, and a mandatory $100.00 special

11    assessment, and if found to be indigent by the court, and

12    additional mandatory $5000.00 special assessment.

13         THE COURT:  If found not to be indigent.

14         MR. JAYNE:  Excuse me.  Not to be indigent.

15         THE COURT:  In addition to the forfeiture that

16    you described earlier of the various devices?

17         MR. JAYNE:  Yes, your honor.

18         THE COURT:  Okay.

19         MR. JAYNE:  And, and as agreed, there's four

20    devices that are gonna be forfeited.

21         THE COURT:  Okay.  Mr. Weyerman, do you

22    understand the penalties set forth by Mr. Jayne including

23    the maximum total penalty and mandatory minimum penalty?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And you also understand that in

1    addition to all the penalties Mr. Jayne just set out that

2    you're going to be required to comply with reporting

3    requirements under the Sex Offender Registration and

4    Notification Act?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Mr. Weyerman, has Ms. Halim discussed

7    the sentencing guidelines with you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand that the guidelines

10   are one factor I will consider in fashioning the sentence

11   I will impose on you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  You understand that the other factors

14   I will consider will include, and these are set out in the

15   Acknowledgment of Rights form that you reviewed and

16   signed, I will include the nature and circumstances of the

17   offense to which you have plead guilty, your history and

18   characteristics, and the pertinent sentencing commission

19   policy statements such as the need to avoid unwarranted

20   sentencing disparities, the need to provide restitution to

21   victims, the need for the sentence to provide for just

22   punishment for the offense to which you have plead guilty,

23   the need to provide adequate deterrents to criminal

24   conduct, the need to promote respect for the law, and the

25   need to protect the public from any further crimes you

1    might commit?

2              THE DEFENDANT:  Yes.

3              THE COURT:  You understand that I will not be

4    able to determine the sentence I will impose on you until

5    after, excuse me, until after a Presentence Report is

6    completed and you and the Government have had the

7    opportunity to object to the Presentence Report and I have

8    a chance to review all the relevant factors including the

9    sentencing guidelines?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand that I could in

12   appropriate circumstances impose a sentence that is less

13   severe or more severe than the sentence recommended by the

14   guidelines?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You understand that parole has been

17   abolished and that you will not be released on parole if

18   you sent to prison?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that if you are

21   sent to prison a term of supervised release will be

22   imposed when, when you are released from prison?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You understand that supervised

25   release may be revoked if you violate its terms and

1   conditions?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand that when

4   supervised release is revoked, and I believe this is set

5   out in the plea agreement you reviewed and signed, the

6   original term of imprisonment may be increased by not more

7   than two years?

8           THE DEFENDANT:  Yes.

9           THE COURT:  You understand that on the basis of

10  the guilty plea you may receive a sentence up to the

11  maximum permitted by law?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You understand that you will not be

14  entitled to withdraw your guilty plea if I impose a more

15  severe sentence than you expected than anyone else

16  recommends?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have you discussed with Ms. Halim the

19  charge against you or actually the charges against you,

20  your right to contest those charges, and the maximum

21  possible penalty and mandatory minimum penalty?

22          THE DEFENDANT:  Yes.

23          THE COURT:  You understand that by pleading

24  guilty and by waiving the rights I have discussed with

25  you, you cannot later come to any court and claim that you

1    are not guilty or that your rights have been violated?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Except you understand you can - you

4    still preserve the right to appeal my denial of your

5    suppression motion.  That's the only exception.

6              THE DEFENDANT:  Okay.

7              THE COURT:  You understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Okay.  You understand that the

10   offense to which you are pleading guilty here today is a

11   felony and that if I accept your plea I will judge you

12   guilty of that felony and that such an adjudication may

13   deprive you of valuable civil rights such as the right to

14   vote, the right to hold public office, the right to serve

15   on a jury, and the right to possess any kind of firearm?

16             THE DEFENDANT:  Yes.

17             THE COURT:  You understand that a plea of guilty

18   may be used agai- excuse me, never mind.  Do you

19   understand that I am authorized to order restitution by

20   you to victims of your crime including restitution for

21   property loss, personal injury, or death?

22             THE DEFENDANT:  Yes.

23             THE COURT:  You understand that I may be

24   authorized to order you to forfeit property as described

25   by the notice of forfeiture filed by the Government?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Having heard from me what your rights

3    are if you plead not guilty and what may occur if you

4    plead guilty, do you still want to give up your rights to

5    a trial and plead guilty?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Mr. Jayne and Ms. Halim, are you

8    satisfied as to Mr. Weyerman's competence to enter a plea?

9          MR. JAYNE:  Yes, Your Honor.

10          MS. HALIM:  Yes, Your Honor.

11          THE COURT:  Are you satisfied that the

12    willingness to plead guilty is voluntary?

13          MR. JAYNE:  Yes, Your Honor.

14          MS. HALIM:  Yes.

15          THE COURT:  Are you satisfied that the guilty

16    plea is not based on any plea agreement except as

17    disclosed on this record?

18          MR. JAYNE:  Yes, Your Honor.

19          MS. HALIM:  Yes.

20          THE COURT:  Are you satisfied that any guilty

21    plea is being made with a full understanding by Mr.

22    Weyerman of the nature of the charge of the maximum

23    possible penalty and mandatory minimum penalty provided by

24    law out of Mr. Weyerman's legal rights to contest the

25    charge to which he's pleading guilty and the charge to

1   which he's not pleading guilty?

2          MR. JAYNE:  Yes, Your Honor.

3          MS. HALIM:  Yes, Your Honor.

4          THE COURT:  Are you satisfied that there is a

5   factual basis for the plea?

6          MR. JAYNE:  Yes, Your Honor.

7          MS. HALIM:  Yes.

8          THE COURT:  Ms. Halim, under the Supreme Court's

9   decision in Missouri versus Frye you have a duty to

10  communicate to your client all formal offers from the

11  Government to accept a plea on the terms and conditions

12  that may be favorable to him.  Have you done so?

13         MS. HALIM:  I have.

14         THE COURT:  Does either of you have any

15  additional questions to pose before we take the plea?

16         MR. JAYNE:  No, Your Honor.

17         MS. HALIM:  None from the defense.

18         THE COURT:  Mr. Weyerman, you'll have the

19  opportunity to address me at sentencing, but is there

20  anything you'd like to say to me at this time?  I'm not

21  suggesting you should say anything at this time but if you

22  wish to I am giving you the opportunity.

23         THE DEFENDANT:  Not at this time.

24         THE COURT:  Very well.  Could we please take the

25  plea?

1          ESR/CLERK WITTJE:  Under criminal docket number

2     2019-88 you are charged with possession of child

3     pornography.  How do you plead, guilty or not guilty?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  Please be seated.  I find that the

6     defendant is competent to plea, that his plea of guilty is

7     voluntary and not the result of force or threats or any

8     promises apart from the plea agreement disclosed on this

9     record, that there is a factual basis for the plea of

10    guilty, that the defendant understands the charges against

11    him, his legal rights, the maximum possible penalty, and

12    mandatory minimum penalty, and that the defendant

13    understands he is waiving his right to a trial.

14    Accordingly, I accept the plea of guilty and will order a

15    Presentence Investigation Report by probation.  His

16    sentencing is set for April 17th of this year at 11:00

17    a.m.  Is there anything else we need to discuss?

18          MS. HALIM:  Is the Court gonna order a

19    psychosocial evaluation as part of the presentence

20    investigation?

21          THE COURT:  If you wish me to I will.

22          MS. HALIM:  I mean, that's something that I was

23    gonna do.  I didn't know if the court would do it

24    separately as well.

25          THE COURT:  It's probably easier if I did it I

1  | assume, so I, I will make that part of the request for the
2  | PSR.
3  |          MS. HALIM:  Thank you, Your Honor.
4  |          THE COURT:  Mr. Jayne?
5  |          MR. JAYNE:  Not on behalf of the Government, Your
6  | Honor thank you.
7  |          THE COURT:  Thanks to both of you and to our
8  | marshals.
9  |          MR. WEYERMAN:  Thank you.
10 |          ESR CLERK/WITTJE:  All rise.
11 |               (Court adjourned at 10:41 a.m.)

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that
the  foregoing  is  a  correct  transcript  from  the  official
electronic  sound  recording  of  the  proceedings  in  the  above-
entitled matter.

June 16, 2021